Filed 8/15/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| COUNTY OF ORANGE,<br><br>　　Respondent,<br><br>　　　　v.<br><br>BRIAN JEFFREY COLE,<br><br>　　Appellant. | G053375<br><br>(Super. Ct. No. 14FL102940)<br><br>O P I N I O N |

　　　　　Appeal from orders of the Superior Court of Orange County, Barry S. Michaelson, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.) Affirmed.

　　　　　The Law Offices of Saylin & Swisher, Brian G. Saylin, Lindsay L. Swisher and Daniela A. Laakso for Appellant.

　　　　　Kamala D. Harris and Xavier Becerra, Attorneys General, Julie Weng-Gutierrez, Assistant Attorney General, Linda M. Gonzalez and Ricardo Enriquez, Deputy Attorneys General, for Respondent.

　　　　　　　　　　*　　　　　*　　　　　*

INTRODUCTION

This is an appeal from a paternity order and a child support order. Our opinion addresses the interplay between Family Code section 7611, subdivision (d) (section 7611(d)),[1] which defines a presumed parent, and section 7613, which addresses the legal responsibilities of a sperm donor. For the reasons we explain, a man can be a sperm donor and nevertheless be a presumed parent and responsible for child support under section 7611(d). Based on the evidence in this case, the man was a presumed parent, and we affirm the trial court's order so finding.

The sperm of Brian Jeffrey Cole was used to inseminate Mie Lynn Tsuchimoto, who gave birth to a boy (the child).[2] When the child was six years old, the County of Orange filed a complaint to declare Cole to be the child's father and to seek child support from Cole. Cole defended on the ground that under section 7613—which addresses sperm donors—he could not be the child's parent. The trial court found that, notwithstanding section 7613, (1) there was a rebuttable presumption under section 7611(d) that Cole was the child's parent because Cole had received the child into his home as his natural child and openly held out the child as his own, and (2) Cole had not rebutted that presumption.

The trial court's findings regarding section 7611(d) are supported by substantial evidence. The inability to establish parenthood under section 7613 does not preclude a finding of parenthood under section 7611(d). We agree with the one existing published case addressing the intersection of sections 7613 and 7611(d); that case did not have an evidentiary record on which to make a decision, necessitating remand to the trial court. We publish this opinion because the evidentiary record here is fully developed,

---

[1] All further statutory references are to the Family Code.
[2] We exercise our discretion under rule 8.90(b)(1) of the California Rules of Court not to name the child.

2

allowing us to conclude that, on this record, presumed parenthood has been established notwithstanding section 7613 regarding sperm donors.


STATEMENT OF FACTS AND PROCEDURAL HISTORY

Tsuchimoto and Cole met in 1991, and began a sexual relationship in 2005. Tsuchimoto and Cole discussed raising a child together.  Tsuchimoto was impregnated with Cole's extracted sperm via in vitro fertilization.  (Cole had previously had a vasectomy.)  Cole agreed to have his sperm extracted for the purpose of impregnating Tsuchimoto.  Tsuchimoto paid all the costs of the fertilization process.  Cole was present in the delivery room when their son was born in February 2008, and selected the child's name.  Cole spent one or two nights per week at Tsuchimoto's residence.  Because Cole was a pilot, Tsuchimoto believed he was out of town when he was not with her.

However, Cole was married to another woman, with whom he has two children, during the entirety of his relationship with Tsuchimoto.  Tsuchimoto was aware that Cole was married, but believed Cole and his wife were separated during the period when Tsuchimoto was pregnant.  Cole's residence with his wife is located about five miles from Tsuchimoto's residence.

Cole identified himself to Tsuchimoto's family and friends as the child's father, did not publicly correct others who said he was the child's father, and did not stop the child from calling him "daddy."

Cole never paid child support, but did buy gifts for the child and occasionally bought groceries.  Cole bought a car for Tsuchimoto after the child's birth. Cole also paid Tsuchimoto about $500 monthly, which he claimed was for renting garage space from her, and helped her make her mortgage payments for a period in 2009.

Cole never brought the child to his own residence, never introduced the child to his wife or older children, and never identified himself as the child's father to any of his family or friends.  Cole did not add the child to his insurance or his estate planning

3

documents, never told his wife and children about the child, and claimed he never intended to have a relationship with the child.

In 2010, Cole cut off all contact with Tsuchimoto and the child. At all times, Cole insisted that he would not be financially responsible for the child.

In August 2014, the County of Orange filed a complaint against Cole, asking that he be declared the child's father and that he be ordered to pay child support. Cole denied that he was the biological father of the child.

Following trial of the matter, the court issued a detailed statement of decision in which it concluded Cole was the child's presumed father. The court made its statement of decision an order of the court. The court then ordered Cole to pay child support. Cole filed a notice of appeal from the paternity order and the child support order.

DISCUSSION

I.

*SECTION 7611(D)*

"A person is presumed to be the natural parent of a child if . . . [¶] . . . [¶] (d) The presumed parent receives the child into his or her home and openly holds out the child as his or her natural child." (§ 7611(d).) This is a rebuttable presumption. The County bore the burden of establishing by a preponderance of the evidence the foundational facts on which the presumption rests. Once the County established the existence of the presumption, the burden shifted to Cole to rebut it by clear and convincing evidence. (§ 7612, subd. (a); *In re J.O.* (2009) 178 Cal.App.4th 139, 147-148.)

"On appeal, we review a trial court's finding of presumed parent status under the substantial evidence standard. [Citations.] We view the evidence in the light most favorable to the ruling, giving it the benefit of every reasonable inference and

4

resolving all conflicts in support of the judgment. [Citation.] We defer to the trial court's credibility resolutions and do not reweigh the evidence. [Citation.] If there is substantial evidence to support the ruling, it will not be disturbed on appeal even if the record can also support a different ruling." (*R.M. v. T.A.* (2015) 233 Cal.App.4th 760, 780.)

The purpose of the presumption of parenthood in section 7611(d) is rooted in the "'"strong social policy in favor of preserving [an] ongoing [parent] and child relationship."'" [Citation.] The presumption is based on the state's interest in "'preserving the integrity of the family and legitimate concern for the welfare of the child. The state has an '"interest in preserving and protecting developed parent-child . . . relationships which give young children social and emotional strength and stability."'" (*R.M. v. T.A., supra*, 233 Cal.App.4th at p. 773, italics omitted.)

"When determining whether the person has met the statutory requirements of receiving the child into his or her home and openly holding the child out as his or her own, the court may consider a wide variety of factors, including the person's provision of physical and/or financial support for the child, efforts to place the person's name on the birth certificate, efforts to seek legal custody, and the breadth and unequivocal nature of the person's acknowledgement of the child as his or her own. [Citation.] No single factor is determinative; rather, the court may consider all the circumstances when deciding whether the person demonstrated a parental relationship by holding out the child as his or her own and assuming responsibility for the child by receiving the child into his or her home." (*R.M. v. T.A., supra*, 233 Cal.App.4th at p. 774.)

Here, the court found: "The facts in this case involving Mr. Cole and [the child] are unique because it is absolutely clear that Mr. Cole wanted a child with Ms. [Tsuchimoto]. He was not a mere bystander and donor. He underwent a medical procedure for the specific purpose of retrieving viable semen in order to impregnate Ms. [Tsuchimoto]. This had been discussed thoroughly between the two of them. . . . [¶] Mr. Cole strongly contends that his real home was with his wife. The evidence is

5

consistent with him having two residences: one with his wife and one with Ms. [Tsuchimoto]. As a pilot Mr. Cole was able to spend 2 to 4 days every week with Ms. [Tsuchimoto] and [the child][3] and some of the rest of the time with his wife. The court must look at the reality of the relationship. For the 2 1/2 year time there is not any question that a relationship existed between [the child] and Mr. Cole. During part of the time for whatever reason he paid the mortgage payments for Ms. [Tsuchimoto]. As stated above he was involved with [the child] in his life holding him out as his child in that aspect of his life. For the court to impose an artificial barrier that merely because he was not married to this woman but was married to another woman under the circumstances of this case would be improper. Had these two parties succeeded in having a natural child there would not be any question of parentage and financial responsibility. Mr. Cole was interested in avoiding financial responsibility. But it is undeniable that Mr. Cole encouraged his relationship with [the child] and his mother. The parties openly spoke of marriage; Mr. Cole at one time had separated from his wife for a period of months and then returned to her. But Ms. [Tsuchimoto] always held out the hope of a permanent relationship with Mr. Cole, which he encouraged. The court cannot turn a blind eye that the relationship must be in the best interest of the child . . . . The factors listed above convince this court that for the first 2 1/2 years of [the child]'s life Mr. Cole was his active parent."

Viewing the facts in the light most favorable to the court's order, we conclude there was sufficient evidence to support the court's findings. Cole voluntarily agreed to undergo a sperm extraction for the purpose of conceiving a child with Tsuchimoto. Tsuchimoto testified she and Cole discussed raising this child together, and

---

[3] Both Tsuchimoto and Cole testified that Cole spent, on average, one to two nights per week at Tsuchimoto's house. Cole also testified that some weeks he did not stay at Tsuchimoto's house at all. Presumably, the court's finding that Cole spent up to four nights per week with Tsuchimoto was a means of explaining how to achieve an average of one to two nights when some of the testimony was that he spent no nights.

marrying at some point. Cole provided financial support for Tsuchimoto before and after the child's birth. Cole was present when the child was born, and helped Tsuchimoto care for him during the first two and a half years of his life. Cole spent an average of one to two nights a week at Tsuchimoto's house, and Tsuchimoto believed that he was traveling for work on the other nights. Cole either identified himself as the child's father to Tsuchimoto's friends and family, or did not correct Tsuchimoto or the child when they referred to him as such. Cole did not introduce Tsuchimoto or the child to his friends and family, but told Tsuchimoto he had no friends.

Cole argues that the presumption of section 7611(d) never arose because the evidence did not support the court's findings that Cole received the child into his home and openly held him out as his natural child. We disagree. As the court noted, Cole was in essence maintaining two homes during the first two and a half years of the child's life—one with his wife and older children, and the other with Tsuchimoto and the child. Cole lived in the second of these homes regularly, helped pay for it, and cared for the child while he was there. Further, while Cole did not tell his wife and older children about the child, he publicly acknowledged to Tsuchimoto's friends and family that he was the child's father, he did not correct Tsuchimoto when she referred to him as the child's father, and he did not object when the child called him "daddy." The statute does not require that Cole hold out the child as his own in every situation and it does not protect fathers who lead double lives.

Cole attempts to overcome the presumption with his own testimony that he did not want a relationship with the child and never wanted any financial responsibilities for him. The trial court rejected Cole's testimony that the child never called him "daddy," based on the child being a "major part of Mr. Cole's life" for two and a half years. Cole's intention to avoid financial responsibility does not rebut the presumption of parenthood.

7

## II.

### SECTION 7613

Cole argues that the court should never have considered the application of section 7611(d) because another statute precluded any parental relationship with the child. The version of section 7613 in place when the child was conceived and born provided: "The donor of semen provided to a licensed physician and surgeon or to a licensed sperm bank for use in assisted reproduction by a woman other than the donor's spouse is treated in law as if he were not the natural parent of a child thereby conceived." (Former § 7613, subd. (b), as enacted by Stats. 1992, ch. 162, § 10.) The inability to establish parenthood based on section 7613 does not prevent parenthood from being established under section 7611(d), however.

In *Jason P. v. Danielle S.* (2014) 226 Cal.App.4th 167, 176 (*Jason P.*), the appellate court explained: "[S]ection 7613(b) should be interpreted only to preclude a sperm donor from establishing paternity based upon his biological connection to the child, and does not preclude him from establishing that he is a presumed parent under section 7611(d) based upon postbirth conduct. [¶] We reach this conclusion because we must construe section 7613(b) " " " " "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." [Citation.]' " [Citation.] . . . [W]e choose the construction that comports most closely with the Legislature's apparent intent, endeavoring to promote rather than defeat the statute's general purpose, and avoiding a construction that would lead to absurd consequences.' "

Both sections 7611 and 7613 are part of the Uniform Parentage Act, and must be interpreted in such a way as to give meaning to both. " " "The statutory purpose [of section 7611] is to distinguish between those fathers who have entered into some familial relationship with the mother and child and those who have not." ' " [Citation.] A biological connection to the child is not necessary for the presumption of paternity to arise. [Citation.] Nor is it necessary for the person seeking presumed parent status to

8

have entered into the familial relationship from the time of conception or birth. '[T]he premise behind the category of presumed father is that an individual who has demonstrated a commitment to the child and the child's welfare—regardless of whether he is biologically the father—is entitled to the elevated status of presumed fatherhood.' [Citation.] Thus, a sperm donor who has established a familial relationship with the child, and has demonstrated a commitment to the child and the child's welfare, can be found to be a presumed parent even though he could not establish paternity based upon his biological connection to the child." (*Jason P., supra,* 226 Cal.App.4th at pp. 177-178.)

*Jason P., supra,* 226 Cal.App.4th at page 171 involved a man, Jason, who sought presumed parent status under section 7611(d), although section 7613 defined him as not being a natural parent because he had provided semen for his former girlfriend's in vitro fertilization. The trial court concluded that under section 7613, Jason was not a natural parent, and that section 7613 was the exclusive means of determining parenthood "in cases involving sperm donors and unmarried women." (*Jason P., supra,* at p. 173.) The appellate court disagreed and concluded that section 7613 does not necessarily preclude a finding of parenthood under section 7611(d), and remanded the matter to allow Jason to attempt to prove his parenthood under section 7611(d). (*Jason P., supra,* at pp. 174-179; accord, *Matter of Kelly S. and Farah M.* (N.Y. 2016) 139 A.D.3d 90, 101-102 [interpreting California law: failure to comply with requirements of § 7613 means presumption established by that statute may not be relied upon to establish parenthood; presumption of parentage under § 7611 may still apply].) We agree.

The appellate court in *Jason P., supra,* 226 Cal.App.4th 167, explained why the contrary conclusion would be incorrect by describing a factual scenario similar to the one in the present case. The court was prescient and stated: "By interpreting section 7613(b) only to preclude a sperm donor from establishing paternity based upon his biological connection to the child, while allowing him to establish that he is a

9

presumed parent under section 7611 based upon a demonstrated familial relationship, we allow both statutes to retain effectiveness and promote the purpose of each. Moreover, we avoid a construction that would lead to unintended, and some might say absurd, consequences. For example, suppose an unmarried couple who had tried unsuccessfully to conceive a child naturally, finally was able to conceive through assisted reproduction. They then got married, after conception but before the birth of the child, and raised the child together. After several years, they divorced and the mother sought child support because she could not afford to care for the child on her own. Under Danielle's interpretation of section 7613(b), the mother's ex-husband would have no obligation to support the child because he was a sperm donor under section 7613(b) and could not be found to be the child's presumed father under section 7611, despite having been married to the mother at the time of the child's birth and having raised the child as his own. The Legislature could not have intended this result." (*Id.* at p. 178.)

Cole does not raise any argument specific to the amount of child support the trial court ordered him to pay.

DISPOSITION

The orders are affirmed. Respondent to recover costs on appeal.

FYBEL, J.

WE CONCUR:

O'LEARY, P. J.

ARONSON, J.