Filed 9/23/20  H.S. v. J.M. CA4/1
Opinion following rehearing

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| H.S.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>J.M.,<br><br>    Defendant and Respondent. | D075319<br><br><br>(Super. Ct. No. 18FL000977N) |


APPEAL from a judgment of the Superior Court of San Diego County, Enrique Camarena, Judge.  Affirmed.

H.S., in pro. per.; Hellman Law Group and Lawrence P. Hellman for Plaintiff and Appellant.

Antonyan Miranda, Anthony J. Boucek, Timothy Miranda, and Sara Yunus for Defendant and Respondent.


Following trial in this Uniform Parentage Act action, the family court denied the petition of H.S. (Appellant) to establish a parental relationship

between Appellant and M., the child of J.M. (Respondent).  Appellant met his initial burden by showing that he received M. into his home and openly held out M. as his own, thereby presumptively establishing parental status under Family Code section 7611, subdivision (d).[1]  Respondent then met her responsive burden and rebutted the presumption, presenting what the family court found to be clear and convincing evidence that "[Appellant] did not significantly care for the child" and "[Appellant's] relationship with [M.] was incidental to his relationship with [Respondent.]"

On appeal, Appellant seeks a reversal of the judgment, contending that the family court prejudicially erred in two respects:  (1) in concluding that Appellant was not a presumed parent of M.; and, alternatively, (2) in denying Appellant's request to reopen his case in chief to present additional evidence—a request Appellant filed three weeks after the court issued its proposed statement of decision.  In July 2020, we filed an opinion affirming the judgment.  Four days later, the California Supreme Court filed its opinion in *Conservatorship of O.B.* (2020) 9 Cal.5th 989 (*O.B.*), in which the court established a new standard of review of one of the issues decided in our opinion.  Accordingly, we granted rehearing on our motion (Cal. Rules of Court, rule  8.268(a)(1)) and requested that the parties provide supplemental

---

[1]     Family Code section 7611 was amended in 2019, effective January 1, 2020.  (Stats. 2019, ch. 115, § 87, eff. Jan. 1, 2020; further undesignated statutory references are to the Family Code.)  The prior version of subdivision (d) in effect at all times relevant to the present appeal provided as follows:  "A person is presumed to be the natural parent of a child if . . . :  [¶] . . . [¶]  [t]he presumed parent receives the child into his or her home and openly holds out the child as his or her natural child."  (Former § 7611, subd. (d); Stats. 2013, ch. 510, § 3.)  Subsequent citations to section 7611, subdivision (d), are to *former* section 7611, subdivision (d), effective January 1, 2014.  (Stats. 2013, ch. 510, § 3.)

2

briefing to address the application of this new standard to the applicable issue on appeal.

As we explain, on rehearing Appellant did not meet his burden of establishing reversible error by the family court. Accordingly, we will affirm the judgment.

## I. INTRODUCTION

" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; accord, *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) "It is well settled, of course, that a party challenging a judgment has the burden of showing reversible error by an adequate record." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574; accord, *Jameson*, at p. 609.) A corollary to this rule is that reviewing courts may disregard factual statements in any party's appellate brief that are not supported by accurate citations to the record on appeal. (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1079 (*Delta Stewardship*); Cal. Rules of Court, rule 8.204(a)(1)(C).[2]) We apply this corollary here and disregard factual statements without accurate record references—in particular, representations of the testimony from witnesses at trial—in *both parties' appellate briefs*.

The record in the present appeal consists of a clerk's transcript, a reporter's transcript of proceedings from four dates between May and August

---

[2] Each brief on appeal must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears. . . ." (Cal. Rules of Court, rule 8.204(a)(1)(C).)

2018, and the trial exhibits. In addition, Appellant has filed a request that this court take judicial notice of: 10 documents from the family court files in Respondent's dissolution of marriage action against Appellant; and one certified reporter's transcript from the November 2018 hearing in the present action on Appellant's request to reopen his case in chief. Respondent opposed Appellant's request.

We deny the request in its entirety. "Reviewing courts generally do not take judicial notice of evidence not presented to the trial court. Rather, normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.'" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) No exceptional circumstances exist that would justify deviating from that rule in this appeal.

That said, the certified copy of the reporter's transcript from the November 2018 hearing is from posttrial proceedings in this case and resulted in a specific order that Appellant directly challenges in this appeal. Accordingly, on our own motion, we augment the record on appeal to include the certified reporter's transcript of oral proceedings on November 1, 2018, a copy of which is identified as Exhibit K to Appellant's request for judicial notice and found at pages 69-85 of the request.[3] (Cal. Rules of Court, rule 8.155(a)(1)(B).)

Appellant represented himself at all stages from the filing of the appeal through the lodging of trial exhibits approximately one week before oral

[3] At the hearing, the parties, through counsel, presented only oral argument—i.e., no evidence. Thus, Appellant is not advantaged and Respondent is not prejudiced by the inclusion of this reporter's transcript in the record on appeal. However, we now have a more complete understanding of what occurred at the hearing.

4

argument.[4]  The procedural rules apply the same to him and his submissions as to a party represented by counsel.  (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985 ["the rules of civil procedure must apply equally to parties represented by counsel and those who forgo attorney representation"], accord, *Burkes v. Robertson* (2018) 26 Cal.App.5th 334, 344-345 [" ' "the same restrictive procedural rules" ' " apply to self-represented litigants]; *In re Marriage of Rothrock* (2008) 159 Cal.App.4th 223, 235 [self-represented party "not entitled to special treatment from the court"]; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247 [self-represented party "not exempt" from procedural rules on appeal].)  The fact that a party is representing himself is not a basis for special treatment that would be unfair to the other litigants.  (*Rappleyea*, at pp. 984-985; *McClain v. Kissler* (2019) 39 Cal.App.5th 399, 416; see Advisory Com. com., Cal. Code Jud. Ethics, canon 3B(8).)  Thus, in the event Appellant's self-represented status contributed to deficiencies in the presentation of Appellant's case on appeal, it does not excuse them.  (*Rappleyea*, at p. 984 [self-representation is not a basis for lenient treatment]; *Nwosu*, at pp. 1246-1247.)

## II.  FACTUAL AND PROCEDURAL BACKGROUND

We view and recite the evidence in a light most favorable to the judgment on appeal.  (*In re M.Z.* (2016) 5 Cal.App.5th 53, 64 (*M.Z.*).)  We note Appellant's "classic mistake" of relying on evidence favorable *to him*, rather than on "evidence favorable *to the judgment*."  (*In re Marriage of Whealon* (1997) 53 Cal.App.4th 132, 143, italics added.)  We limit this background

---

[4]  Appellant substituted retained counsel a few days before oral argument.  Counsel argued the matter and submitted Appellant's brief on rehearing.

presentation to the facts and procedures properly cited by the parties in their briefs[5] or observed in our independent review of the record on appeal.

M. was born in April 2013 to biological parents with substance abuse issues and psychological needs. He was immediately placed in foster care, and Respondent met and received M. from child protective services when he was two days old. At the time of the trial in this action, five-year-old M. had special needs based on delayed speech, learning disabilities, and behavioral issues.

Respondent began the adoption process at the end of 2013, before she met Appellant, when M. was approximately eight months old. Appellant knew that Respondent was in the process of adopting M. when they began dating in or around February 2014. Appellant finalized M.'s adoption in June 2014, and M.'s birth certificate, issued the next month at a time when Appellant and Respondent were engaged to be married, does not list Appellant as the father. Appellant had met M. only three times before the parties married, and Appellant did not pay for any of M.'s expenses prior to the marriage.

Appellant and Respondent married in August 2014. According to Respondent, their marriage was "emotionally abusive, verbally abusive, just really unstable." She described his behavior toward M. as "very rough": Appellant "would antagonize him, bully him," would "say inappropriate

---

5    As explained in the text, *ante*, we have disregarded factual statements without accurate record references in both parties' appellate briefs. (*Delta Stewardship*, *supra*, 48 Cal.App.5th at p. 1079.) In addition, we have disregarded the evidence that Appellant relies on by the citation to his "Responsive Declaration," since it does not contain evidence from trial. In its statement of decision, the family court granted Respondent's request to exclude the parties' declarations, and Appellant has not challenged that ruling in this appeal.

things to him," and would "constantly torment[] him."[6] As a result, from a very young age, M. was afraid of Appellant and afraid of being left alone with Appellant. Throughout their marriage, Respondent (with M.) would live apart from Appellant a few times a year. In August 2015 and December 2015, for example, Respondent (with M.) lived with a friend in Los Angeles and with family in New Jersey, respectively, for approximately two months each. During these periods of separation, Appellant did not "seek out M[.]," did not "ask to see M[.]," did not ask Respondent "how is M[.] doing," and did not "financially assist [Respondent] with M[.] in any way."

In early November 2017, Respondent gave birth to the parties' daughter, Z.

Respondent petitioned to dissolve the parties' marriage in December 2017, and she and M. moved out the family's residence in January 2018. Since that date, Appellant has provided no financial support for M.

In late January 2018, Appellant filed the underlying action, seeking: a judgment of paternity, on the basis that Appellant is a presumed parent of M.; joint legal and physical custody of M.; and consolidation of this paternity action with the parties' pending action for dissolution of their marriage. Respondent filed a response to Appellant's petition in which she stated that Appellant was not M.'s father, but that he should have weekend visitation with M. on the same visitation schedule as he visited with Z.

Over the course of five days during the May - August 2018 time period, the parties tried their case in the family court. They called eight witnesses,

---

6    For example, and without limitation, if M. was building something with his toys, Appellant "would knock it down just to upset him or just mess him up." At one of M.'s birthday parties, Appellant "smashed [M.'s] head . . . in his birthday cake." In addition, Appellant "put [M.] in a closet and closed the door and shut the lights out just to see what he would do."

and the court received into evidence more than 50 exhibits. Following closing argument, the court took the matter under submission and later issued a proposed statement of decision.

In its proposed statement of decision, the family court denied Appellant both parental status and a judgment of paternity. After first providing a summary of the evidence, the court found and concluded in relevant part:

> "[O]n balance [Appellant] did not significantly care for [M.]. . . . [¶] . . . [¶ ] . . . [Appellant's] relationship with M[.] was incidental to his relationship with [Respondent]. [Appellant] met his burden by [a] preponderance of the evidence. [Respondent] rebutted the presumption with clear and convincing evidence."

Appellant filed objections to the proposed statement of decision.

Before Appellant's objections could be heard and after the deadline for filing further objections, Appellant filed a request for an order "to re-open [his] case in chief" to present the testimony of five identified witnesses (RFO). Respondent opposed the RFO, and Appellant filed a reply. Following hearing, the family court denied Appellant's RFO, finding that it was untimely.[7] At this hearing, the court also ruled that the proposed statement of decision, as originally issued, would be the final statement of decision.

The court entered a judgment in favor of Respondent, attaching and incorporating its statement of decision. Appellant timely appealed from the judgment.

In July 2020, we filed an opinion affirming the judgment. In part, we ruled that the record contains substantial evidence to support a specific finding that the family court made based on *clear and convincing evidence*.

---

7    We will present the facts, the parties' positions, and the details of the family court's ruling in our discussion of the merits at part III.B.2.a., *post*.

8

We granted rehearing on our own motion (Cal. Rules of Court, rule 8.268(a)(1)) when, before our opinion was final, the Supreme Court established a new standard of review of factual findings that may be made in the trial court only upon a showing by clear and convincing evidence. (*O.B.*, *supra*, 9 Cal.5th 989.) We then requested supplemental briefing to address this new standard, received the supplemental briefing, and resubmitted the matter.

## III.  DISCUSSION

On appeal, Appellant seeks a reversal of the judgment, arguing that the family court erred: (1) in concluding that he was not a presumed parent of M., and alternatively, (2) in denying his request to reopen his case in chief. As we explain, Appellant did not meet his burden of establishing reversible error.

A.    *Denial of Parental Status*

  1.    *Law*

A person is presumed to be the natural parent of a child if the person both receives the child into his or her home and openly holds the child out as his or her natural child. (§ 7611, subd. (d); see fn. 1, *ante*.) " ' " [T]he statutory purpose [of section 7611] is to distinguish between those fathers who have entered into some familial relationship with the mother and child and those who have not.' " . . . "[T]he premise behind the category of presumed father is that an individual who has demonstrated a commitment to the child and the child's welfare—regardless of whether he is biologically the father—is entitled to the elevated status of presumed fatherhood." ' " (*Jason P. v. Danielle S.* (2017) 9 Cal.App.5th 1000, 1019.) The section 7611, subdivision (d) presumption may be used even though the person is not the biological parent of the child, because the " '[parentage] presumptions are

9

driven, not by biological [parentage], but by the state's interest in the welfare of the child and the integrity of the family.' " (*Elisa B. v. Superior Court* (2005) 37 Cal.4th 108, 121-122; accord, *In re Nicholas H.* (2002) 28 Cal.4th 56, 58-59 (*Nicholas H.*).)

The parental presumption under section 7611, subdivision (d) "is a rebuttable presumption affecting the burden of proof and may be rebutted in an appropriate action only by clear and convincing evidence." (§ 7612, subd. (a).) This rebuttal provision " 'seeks to protect presumptions of [parental status], once they have arisen, from being set aside except upon clear and convincing evidence and only in an appropriate case.' " (*Nicholas H.*, *supra*, 28 Cal.4th at p. 66.) Thus, a party disputing a presumed parent finding in the family court has the burden to rebut the presumption by clear and convincing evidence. (*County of Orange v. Cole* (2017) 14 Cal.App.5th 504, 509.) " ' "Clear and convincing" evidence requires a finding of high probability[, or] evidence . . . " 'so clear as to leave no substantial doubt'; 'sufficiently strong to command the unhesitating assent of every reasonable mind.' " ' " (*Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 594.)

On appeal, we review a finding of presumed parent status under the substantial evidence standard. (*M.Z.*, *supra*, 5 Cal.App.5th at p. 64.) Because Appellant challenges a family court finding that must be based on *clear and convincing evidence*, we "must account for the clear and convincing standard of proof when addressing a claim that the evidence does not support a finding made under this standard." (*O.B.*, *supra*, 9 Cal.5th at p. 1011.) In conducting this review under the new standard established by our Supreme Court in *O.B.*, we "must view the record in the light most favorable to [Respondent] and give appropriate deference to how the trier of fact may

10

have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Id*. at pp. 1011-1012) We must then "determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by th[e clear and convincing] standard of proof" applied by the family court. (*Id*. at p. 1005.)

In doing so, we are nonetheless limited by the well-known standard: " 'If there is substantial evidence to support the ruling, it will not be disturbed on appeal *even if the record can also support a different ruling*.' " (*M.Z.*, *supra*, 5 Cal.App.5th at p. 64, italics added.) As particularly applicable given Appellant's presentation on appeal, " '[w]e do not review the evidence to see if there is substantial evidence to support the losing party's version of events, but only to see if substantial evidence exists to support the [ruling] in favor of the prevailing party.' " (*In re Marriage of Brooks* (2019) 33 Cal.App.5th 576, 592 (*Brooks*); accord, *Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 118 (*Campbell*) ["the evidence most favorable to [the ruling on appeal] must be accepted as true and *conflicting evidence must be disregarded*"; italics added].)

In short, Appellant has the burden of showing that there is no evidence "from which a reasonable trier of fact could have made the finding of high probability" necessary to support the family court's ruling that Respondent rebutted the presumption of parentage of M. by clear and convincing evidence. (*O.B.*, *supra*, 9 Cal.5th at p. 1005; see *In re A.E.* (2014) 228 Cal.App.4th 820, 826 (*A.E.*).)

2. *Analysis*

Quite a bit of Appellant's presentation on appeal emphasizes the evidence that supports the family court's ruling that Appellant met his initial

11

burden of showing that he received M. into his home and openly held out M. as his own, thereby presumptively establishing parental status under section 7611, subdivision (d).  However, *that* finding is not being challenged in this appeal.  The issue is whether Respondent met her *responsive burden* and, thus, for purposes of appeal, whether the record contains substantial clear and convincing evidence to support the court's findings that "[Appellant] did not significantly care for the child" and "[Appellant's] relationship with [M.] was incidental to his relationship with [Respondent.]"

Appellant has not attempted to explain whether the record lacks sufficiently "substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by th[e clear and convincing] standard of proof" applied by the family court.  (*O.B.*, *supra*, 9 Cal.5th at p. 1005.)  Accordingly, based on firm precedent, Appellant has forfeited appellate consideration of this substantial evidence issue:

> " 'The rule is well established that a reviewing court must presume that the record contains evidence to support every finding of fact, and an appellant who contends that some particular finding is not supported is required to set forth in his brief a summary of the material evidence upon that issue. *Unless this is done, the error assigned is deemed to be waived. . . .* It is incumbent upon appellants to state fully, with transcript references, the evidence which is claimed to be insufficient to support the findings.' "

(*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887, italics added, citing Supreme Court authority from 1931 and quoted in Court of Appeal authority as recently as 2017 in *In re Marriage of Dalgleish & Selvaggio* (2017) 17 Cal.App.5th 1172, 1183.)[8]

---

[8]    In our original (now vacated) opinion, we ruled that Appellant had forfeited appellate consideration of his substantial evidence argument because he failed to set forth the material evidence in support of the findings

In any event, based on our independent review of the record, we are satisfied that substantial evidence—i.e. "evidence from which a reasonable trier of fact could have made the finding of high probability demanded by th[e clear and convincing] standard of proof" (*O.B.*, *supra*, 9 Cal.5th at p. 1005)—supports the family court's findings that "[Appellant] did not significantly care for the child" and "[Appellant's] relationship with [M.] was incidental to his relationship with [Respondent.]"  We discuss below some of this rebuttal evidence—which is just a sampling of the testimony from Respondent, Respondent's friend, and one of M.'s nannies—presented by Respondent.  To have avoided forfeiture of our consideration of the substantial evidence issue on the merits, at a minimum, Appellant should have argued why this (and other evidence favorable to the judgment) is not sufficiently substantial to support the court's findings.  (*A.E.*, *supra*, 228 Cal.App.4th at p. 826.)

---

*that he challenged* and to explain how that evidence was not sufficiently substantial to support the adverse findings.  Instead, Appellant relied on evidence that arguably supported findings *in his favor* that were not made.  In particular, we explained that, in conducting our substantial evidence review on appeal, we do not consider what Appellant described as evidence " ' contradictory' " to the family court's findings.

Nonetheless, in his brief on rehearing, Appellant did nothing to attempt to overcome this forfeiture.  Appellant again fails to explain why the family court's findings lack substantial evidence *under the new standard of review* established by our Supreme Court in *O.B.*, *supra*, 9 Cal.5th at page 1005.  Instead, Appellant again relies on "conflicting evidence" that he contends supports his position.  As before, however, we "disregard[]" such conflicting evidence (*Campbell*, *supra*, 32 Cal.3d at p. 118), since we only consider the evidence *in support of the findings actually made* when determining whether such findings are supported by substantial evidence (*Brooks*, *supra*, 33 Cal.App.5th at p. 592).  That is because we resolve "all conflicts" in contradictory evidence "in support of the judgment."  (*M.Z.*, *supra*, 5 Cal.App.5th at p. 64.)

13

One of M.'s nannies testified that, based on her observations, "[Appellant] didn't care about [M.] . . . . As a father, he was never a father. . . . I feel like [Appellant] was too aggressive of a father with [M.]." Most evenings, M. was asleep when Appellant returned home from work, but even if M. was awake, there would not be "any interaction between [Appellant] and [M.]." In addition, Appellant "never took care of [M.]" and "never taught him anything." The nanny also described Appellant's aggressive behavior toward M., including physically shaking him. Since the parties separated in January 2018, M. has not asked the nanny or anyone else in her presence anything about Appellant.

Respondent's friend, with whom Respondent and M. lived in Los Angeles for over two months in mid-2015, testified that Appellant did not once telephone or FaceTime M. or contact the friend to inquire about M. During this time, the friend never heard M. mention or ask about Appellant. Based on the friend's observations of Appellant and M. together during the 2014-2016 time period (e.g., at the parties' wedding, M.'s birthday party, New Year's Eve, etc.), Appellant did not "t[ake] any interest in [M.] at all." "[T]here wasn't a lot of interaction between them," and when there was, the interaction was not positive. For example, the friend described an incident at M.'s third birthday party, confirmed by Respondent, where Appellant physically pushed M.'s face into the cake, causing M. to "completely melt[] down." Finally, the friend never heard Appellant tell anyone that he wanted to be M.'s father or adopt M.[9]

---

[9] A second nanny, one who worked for the family five nights a week from 6:00 p.m. to 9:00 p.m. during the September 2016 - December 2017 time period, also testified that Appellant never told her that he was or wanted to be M.'s father.

Respondent testified that, although her adoption of M. was completed at a time when the parties were engaged to be married in mid-2014, Appellant never asked to be added to M.'s birth certificate prior to filing for a dissolution of the marriage in December 2017. Nor did Appellant buy M. any presents, for celebrations or otherwise, until the end of 2017. During the parties' marriage, there were approximately five periods of separation, some as long as two months. Respondent always had M. with her, and Appellant did not once ask to see M., ask about M., ask to speak to M., or ask to FaceTime with M. Likewise, during these separations, M. never asked about Appellant. Over the years, Appellant "was very rough with [M.]" Appellant "would scream at him," "would antagonize him, bully him," "would say inappropriate things to him" and "would just do . . . very awful things to this young child." Examples include: knocking down M.'s toys just to "upset him" or to "mess him up"; smashing M.'s head into M.'s birthday cake; and putting M. in a closet, shutting off the lights, and closing the door, "just to see what he would do." As a result, M. was "so afraid" of Appellant that he "just didn't want to be left alone with [Appellant]."

Respondent also described a rocky marriage during which the parties discussed divorce at least three times. In his effort to make the marriage work, Appellant used M. "as a tool of manipulation" by only engaging with M. if the contact might resolve the conflict between the parties. According to Respondent, "the history of the marriage has shown that [Appellant] has used [M.] as a tool," and Appellant was prosecuting this parentage action only as "another opportunity to control a situation he finds uncontrollable at this point. And . . . he is using [M.] against me."

Finally, Appellant had not provided any financial support for M. since January 2018.

Moving on from our substantial evidence analysis, we are not persuaded by any of Appellant's related arguments.

First, Appellant argues that the family court's judgment "is tantamount to separating siblings." (Some capitalization omitted.) However, separation of siblings is only an issue when considering custody and/or visitation; and to adjudicate such issues, the family court must have jurisdiction. Custody and visitation disputes may be litigated in *the parents'* dissolution, nullity or legal separation action (Fam. Code, §§ 2010, subd. (b), 3021, subds. (a), (b) & (c)) or in an independent custody/visitation action between *the parents* for exclusive custody (Fam. Code, §§ 3021, subd. (d), 3120). In such an action, except as otherwise permitted by statute, the court's jurisdiction is limited to minor *children of the parties'* marriage or domestic partnership. (Fam. Code, §§ 2010, subd. (b), 3120; *In re Marriage of Lewis & Goetz* (1988) 203 Cal.App.3d 514, 518 (*Lewis & Goetz*).) Since consideration of the child's "best interests" does not create subject matter jurisdiction to adjudicate custody or visitation (*Lewis & Goetz*, at pp. 518-519[10]), neither does consideration of "sibling separation." In short, because the family court determined Appellant was *not* M.'s parent, the court lacked jurisdiction to adjudicate custody or visitation. For this reason, the authorities cited by Appellant—in each of which the parties had established their status as parents prior to the consideration of custody/visitation

---

[10]    In *Lewis & Goetz*, the appellate court ruled that, since a stepchild is not a child of the parties' relationship, family courts have no jurisdiction to entertain a stepparent's custody request based on the stepparent-child relationship. (*Lewis & Goetz*, *supra*, 203 Cal.App.3d at p. 518; accord, *Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 305 [stepparents have no legal right to custody]; but see Fam. Code, § 3101 [upon a specified showing, stepparent visitation claims may be adjudicated in certain family law actions].)

16

issues—are inapposite.  (*In re Marriage of Williams* (2001) 88 Cal.App.4th 808, 809; *In re Marriage of Steiner & Hosseini* (2004) 117 Cal.App.4th 519, 529 [affirmed the sibling separation]; *J.M. v. G.H.* (2014) 228 Cal.App.4th 925, 938 [unrelated stepsiblings].[11])

Second, Appellant suggests that "Dr. Dupee's testimony should not have been weighted [*sic*] heavily."[12]  (Some capitalization omitted.)  In that the statement of decision does not mention Dupee in its extensive findings, Appellant's contention regarding the weight given to Dupee's testimony is unsupported by the record.[13]  Regardless, even if the family court had "heavily" weighed Dupee's testimony, as an appellate court, we lack the power to reweigh the evidence.  (*M.Z.*, *supra*, 5 Cal.App.5th at p. 64.)  Finally, Appellant argues that the joint custody and regular visitation he requested in his petition are in M.'s best interest, relying on sections 3011, 3040, 3041, and 3020.  As we just explained, however, without establishing parentage, the child's "best interests" do not create subject matter jurisdiction to adjudicate custody or visitation.  (*Lewis & Goetz, supra*, 203

---

[11]  Appellant also cites "<u>Heath</u>, *supra*, at 447-448."  (*Sic*.)  We will not speculate as to the authority Appellant intended.

[12]  Dupee is a medical doctor, retained and called as an expert witness by Respondent.

[13]  Prior to trial, the family court denied Appellant's motion to exclude Dupee's testimony, ruling that the anticipated testimony is "relevant to the issues at hand," and Appellant's objection "goes to the weight and not admissibility of the evidence."  The record does not indicate what weight, *if any*, the court gave Dupee's testimony.  To the contrary, the two principal findings in support of the judgment—namely, that Appellant "did not significantly care for [M.]" and his relationship with M. "was incidental to his relationship with [Respondent]"—are not based on evidence from expert Dupee, but rather on evidence from the parties and percipient witnesses.

17

Cal.App.3d at pp. 518-519.)  Since Appellant is not M.'s parent, the family court in this action lacked jurisdiction to adjudicate custody or visitation.

B.      *Denial of Appellant's Request to Reopen Case in Chief*

1.      *Law*

A motion to reopen the evidence prior to judgment "invoke[s] the court's fundamental authority to control the order of proof and the conduct of proceedings before it.  (Evid. Code, § 320; Code Civ. Proc., § 128, subd. (a)(3).)"[14]  (*Rosenfeld, Meyer & Susman v. Cohen* (1987) 191 Cal.App.3d 1035, 1052, fn. 7 (*Rosenfeld*).)  "A motion made after submission to reopen a case for the purpose of introducing further evidence is addressed to the sound discretion of the [trial] court." (*Stewart v. Cox* (1961) 55 Cal.2d 857, 866; accord, *Rosenfeld*, at p. 1052 [motion filed after issuance of proposed statement of decision].)  In an appeal from an order denying a motion to reopen the case, the " ' "test for abuse of discretion is whether the trial court exceeded the bounds of reason." ' "  (*Estate of Young* (2008) 160 Cal.App.4th 62, 82 (*Young*).)  " ' "To be entitled to relief on appeal from the result of an alleged abuse of discretion [in denying a motion to reopen the case,] it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice." ' "  (*Ibid.*)

2.      *Application of the Law to the Facts*

In his briefing on appeal, Appellant presents no references to the trial proceedings, only to the posttrial proceedings related to his motion to reopen the case.  Throughout this nine-page argument, Appellant cites to his

---

14      "Except as otherwise provided by law, the court in its discretion shall regulate the order of proof."  (Evid. Code, § 320.)

"Every court shall have the power to . . . [¶] . . . [¶] . . . provide for the orderly conduct of proceedings before it . . . ."  (Code Civ. Proc., § 128, subd. (a)(3).)

declaration in support of the motion four times[15] and to the family court's order denying the motion once. Rather than declining to reach the merits because of inadequate record references, we will merely disregard Appellant's factual statements that are unsupported by accurate record references. (*Delta Stewardship*, *supra*, 48 Cal.App.5th at p. 1079; Cal. Rules of Court, rule 8.204(a)(1)(C); see fn. 2, *ante*.)

    a.    *Additional Facts*

During the first day and a half of the trial, Appellant presented and closed his case in chief by calling two witnesses—himself and a work colleague.

Respondent submitted three witness lists. She submitted one list on the first day of trial (identifying Appellant, Respondent, Respondent's expert, and one of M.'s nannies); she submitted a second list on the second day of trial (identifying Respondent's friend); and she submitted a third list on the fifth day of trial (identifying Respondent's friend again and another of M.'s nannies).[16]

---

[15]    Two of the four citations to Appellant's declaration are to the entire seven pages, not to any specific testimony.

    Appellant's declaration refers to seven exhibits. None of them are in the record on appeal, and Appellant has not provided copies to this court.

[16]    Trial dates included May 14, June 15, June 27, July 25, and August 20, 2018. Appellant has not provided a reporter's transcript for day 4, July 25, 2018. Based on the clerk's minutes of that date, no evidence was presented; counsel argued Respondent's in limine motion to preclude the admissibility of five home videos that Appellant wanted to present as part of his rebuttal case. The family court denied Respondent's motion, allowing Appellant to present the videos in his rebuttal case and allowing Respondent to call the two witnesses on her third witness list (Respondent's friend and one of M.'s nannies) *as part of her "sur-rebuttal" case.*

Based on an in limine ruling on the fourth day of trial, as part of Appellant's rebuttal case, Appellant presented five home videos, and the court admitted them into evidence. (See fn. 16, *ante*.)

During the presentation of one of Respondent's surrebuttal witnesses, Appellant objected, arguing that the witness's testimony exceeded the scope of Appellant's rebuttal case. Respondent countered with an oral "motion . . . to reopen evidence and to call [Respondent's] witness who was already indicated on [Respondent's] witness list[.]"[17] The court granted Respondent's oral motion, explaining: "In part, the Court wants to hear about this. Frankly, [the first nanny's] testimony was rather strong [against Appellant]. And [Appellant] felt the need to rebut it. I don't think it is a bad thing for the Court to hear more evidence about the nature of the relationship between [Appellant] and [M.] from people who were present[.]" Respondent presented the remainder of the surrebuttal testimony from Respondent's friend and a second nanny. Appellant cross-examined both of Respondent's surrebuttal witnesses.

At the close of Respondent's surrebuttal case, in response to a direct question from the court, Respondent's counsel stated that Respondent did not have any further witnesses, and Appellant's counsel stated: "Your Honor, at this point *I could call another witness* to rebut the testimony we just heard [from Respondent's surrebuttal witnesses], but then I think we could be here for 10 days, so *at this time I am not going to do that*." (Italics added.)

---

[17] In his declaration in support of his oral motion to reopen his case in chief, Appellant testified that Respondent's motion was "to reopen [*Respondent's*] *case in chief*." (Italics added.) That statement is not borne out by the reporter's transcript, which discloses clearly that Respondent's motion was "*to reopen the evidence*." (Italics added.)

After the noon recess, the parties presented their closing arguments, and the court took the matter under submission.

Approximately 10 days later, the family court issued a proposed statement of decision in favor of Respondent, described *ante*, ruling that Appellant was not entitled to be M.'s presumed parent under section 7611, subdivision (d). Pursuant to the applicable procedures, Appellant timely filed objections.

Before the court ruled on Appellant's objections, Appellant filed the RFO—i.e., a request for an order "to re-open [his] case in chief" to present the testimony of five identified witnesses. In principal part, Appellant argued that "the evidence he now seeks to introduce is necessary to address testimony by two witnesses that this Court unexpectedly allowed Respondent . . . to introduce on the last day of trial *after* she had rested her case-in-chief. This testimony was allowed at the last minute over [Appellant's] objection that it did not address the . . . rebuttal evidence introduced by [Appellant], but rather, went well beyond the scope of proper sur-rebuttal evidence."

Respondent opposed the RFO. Substantively, she argued that, since the family court had tentatively ruled that Appellant met his initial burden to establish presumed parent status under section 7611, subdivision (d), "there is no legal basis upon which to reopen [Appellant's] case-in-chief." Procedurally, she argued that Appellant's RFO was untimely.

After full briefing and oral argument, the family court denied Appellant's RFO, ruling in part that Appellant's request was untimely, because Appellant did not make his request to present his additional witnesses prior to closing argument.

b.    *Analysis*

"[D]enial of a motion to reopen [the evidence] will be upheld if the

moving party fails to show diligence or that he had been misled by the other party." (*Guardianship of Phillip B.* (1983) 139 Cal.App.3d 407, 428.) Here, the record on appeal does not support a showing that Appellant either acted diligently or was misled by Respondent.

The only evidence of diligence (which is not cited in Appellant's briefs on appeal) is the following testimony from Appellant in support of the RFO: "I have acted diligently in directing my attorney to file this [RFO] as soon as possible . . . ." Appellant tells us—without a record reference—that he filed his RFO within 12 days of service of the family court's proposed statement of decision. Our review of the record establishes that Appellant filed his RFO *21 days* after the filing of the proposed statement of decision.[18]

The family court found that Appellant was not diligent by failing to bring the request *prior to closing argument*. (Compare *Rosenfeld*, *supra*, 191 Cal.App.3d at p. 1052 [no diligence where motion to reopen evidence was filed after trial court had issued a tentative decision].) The family court has "the power to . . . [¶] . . . [¶] . . . provide for the orderly conduct of proceedings before it" (Code Civ. Proc., § 128, subd. (a)(3)) and the "discretion [to] regulate the order of proof" (Evid. Code, § 320). Here, the court allowed Appellant to present five home videos in rebuttal over objection, allowed Respondent to reopen the evidence to present testimony over objection in response to Appellant's rebuttal case, and then *expressly asked both counsel whether either had any further witnesses*. After regulating the order of proof over four days of testimony, in posttrial proceedings the experienced trial judge who presided over the trial exercised his discretion to disallow the further

---

[18] While the nine days difference may arguably be immaterial for purposes of determining diligence in this case, misrepresentations of the record on appeal are not.

reopening of evidence after closing argument.

Finally, Appellant presented no evidence to the family court, nor does he argue on appeal, that he was seeking to reopen his case in chief because Respondent had misled him. Although Appellant testified in support of the RFO that he did not "have any indication that [Respondent] was going to move to re-open her case," the court gave Appellant the opportunity to call additional witnesses. These facts neither establish nor imply that Respondent misled Appellant.

On this record of diligence by Appellant and the opportunity for Appellant to present evidence prior to closing argument, the family court did not " ' "exceed[] the bounds of reason" ' " in precluding Appellant from reopening his case in chief, and Appellant's inability to call the additional five witnesses is not " ' "sufficiently grave to amount to a manifest miscarriage of justice." ' " (*Young*, *supra*, 160 Cal.App.4th at p. 82.) Accordingly, the family court did not abuse its discretion in denying Appellant's RFO to reopen Appellant's case in chief.[19]

## IV. DISPOSITION

The judgment is affirmed. Respondent is entitled to her costs on appeal. (Cal. Rule of Court, rule 8.278(a)(2).)

---

[19] Substantively, the family court could have denied the RFO on the basis that Appellant wanted to reopen his *case in chief*. By the time he filed the RFO, Appellant had received the proposed statement of decision, pursuant to which he knew that he had met his burden under section 7611, subdivision (d). Thus, there was no basis on which Appellant could have wanted to reopen his *case in chief*.

23

IRION, J.

WE CONCUR:


BENKE, Acting P. J.


HUFFMAN, J.