Filed 4/6/23  In re H.A. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re H.A. et al., Persons Coming Under the Juvenile Court Law. | B319152 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 21CCJP05625B, C) |
| Plaintiff and Respondent, | |
| v. | |
| ADRIAN P., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mary Kelly, Judge.  Affirmed in part and reversed in part with directions.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Dawyn Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Senior Deputy County Counsel, for Plaintiff and Respondent.

———————————

Adrian P. (father) appeals from a disposition order concerning his children H.A. (born in May 2019) and Princess R. (born in December 2021). He contends the juvenile court erred in denying him presumed father status pursuant to Family Code[1] section 7611, subdivision (d), and the Los Angeles County Department of Children and Family Services (DCFS) failed to adequately investigate the children's possible Indian ancestry as required by California law implementing the Indian Child Welfare Act (ICWA) (Welf. & Inst. Code, § 224 et seq.). We conclude that father is entitled to presumed father status as to both children, and the ICWA issue is moot because the juvenile court has already ordered DCFS to conduct a further ICWA inquiry. We therefore will direct the juvenile court to amend the disposition order to give father presumed father status as to both children, and we will affirm the disposition order as amended.

---

[1]     All subsequent undesignated statutory references are to the Family Code.

# FACTUAL AND PROCEDURAL BACKGROUND

## I.    Background.

Nancy A. (mother) and father are the parents of H. and Princess.[2]  Mother gave birth to Princess at home in early December 2021.  Princess and mother were transported to the hospital, where both tested positive for amphetamines and methamphetamines.  Mother said she had found out she was pregnant just three months before giving birth and had not had any prenatal care.  She admitted smoking methamphetamine four days before Princess was born, but otherwise denied using methamphetamines during the prior five years.

Mother said she and father had been together for 15 years, and he was H.'s and Princess's father.  Father had not been at the hospital after Princess's birth because he was not vaccinated against Covid-19, but he had visited virtually with mother and Princess.

Father contacted DCFS two days after Princess's birth.  He said he had lost his parental rights to an older child and did not want to go through that again.  He was not certain whether he could care for Princess, but he said he would talk to paternal grandmother about helping him.

The parents gave inconsistent reports about where they were living immediately prior to Princess's birth.  Mother said she, father, and H. lived with maternal grandmother, father's sister, and mother's two brothers.  Father initially said he was living with friends; he later clarified that he and mother wanted

---

[2]    The children's half-sibling, Jaiden, who has a different father, is not a subject of this appeal.

to live together, but the maternal grandmother had "issues" with him and so he would "sneak in the house."

The paternal grandmother said she had found out about mother's pregnancy three months earlier and had offered to take mother to the doctor. Father's belongings were at the paternal grandmother's house, but father was "a wanderer."

## II. Petition and detention.

On December 10, 2021, DCFS filed a petition pursuant to Welfare and Institutions Code section 300, subdivisions (b)(1) and (j) alleging that H. and Princess were at substantial risk of serious physical harm because Princess tested positive for amphetamines and methamphetamines at birth (count b-1); mother had a history of substance abuse, used methamphetamines during her pregnancy with Princess, and had a positive toxicology screen for amphetamines and methamphetamines the day of Princess's birth (count b-2); and father had a history of substance abuse and a criminal history, including convictions for driving under the influence and possession of a controlled substance, and had failed to protect the children from mother's substance abuse (counts b-3, j-1).

Both parents appeared remotely at the December 16, 2021 detention hearing and requested that the children be released to them. The same day, mother submitted Parentage Questionnaires in which she stated that father was H.'s and Princess's father; he had not been present at the birth of either child; he had signed Princess's birth certificate, but not H.'s; the parents were unmarried but had been living together at the time of the children's conception and birth; father had held himself out as the father of both children; and father had lived with mother and H. since H.'s birth and had helped to support H. financially.

4

Father submitted a Statement Regarding Parentage (JV-505) in which he stated that he believed he was the children's father, had held himself out as the children's father to family and friends, had lived with the children from their birth until "recently," had participated in "all parental activities," and had supported the children financially. He requested that the court enter a judgment of parentage as to both children.[3]

The juvenile court detained the children from both parents, finding that the children would be at substantial risk of harm in the parents' custody. As to father's status in the proceedings, the court said that because father "sign[ed] the birth certificate," there was a rebuttable presumption that he was the presumed father. No party objected, and the court therefore designated father the presumed father of both children.

## III. Jurisdiction and disposition.

In January 2022, mother told a children's social worker that she and father had known each other 15 years and had been high school sweethearts. They took a break from their relationship when father went to jail five or six years earlier, but had been in a committed relationship since H. was born. Before the children were detained, father had gone "back and forth between" mother's home and the paternal grandmother's home, but he had moved in with mother after the children were detained to support her.

Father said he had been in mother's life for 15 years. He had not been living with mother when the children were detained

---

[3]   The parentage forms were unsigned, presumably because the detention hearing took place remotely.

5

because her mother (the maternal grandmother) "ha[d] issues with" him, but "now because this happened [the maternal grandmother] is okay with me being there." Father said he had submitted to an on-demand drug test and was participating in a parenting program. His goal for the future was "to be able to provide a home for my kids and [mother]."

DCFS reported that mother and father were visiting the children together three times per week, monitored by the children's caregiver.

The court held a combined jurisdiction/disposition hearing on February 18, 2022. Mother's and father's attorneys requested that the petition be dismissed and the children returned to the parents' custody; DCFS and children's counsel urged that the petition be sustained.

The court sustained the petition as amended. It then addressed father's status in the proceedings, stating that its finding on presumed father status "was based on facts that were not true." The court continued: "It was represented to me that father had gone back and signed the birth certificate. And the birth certificate is produced and there's no father on the birth certificate. And father wasn't present at the birth and whatever the reason he wasn't there, whether it was Covid or not, I think it's premature to say he is presumed at this point. So I'm changing his status to bio based on the birth certificates."

The court then asked whether mother and father had been living together since H.'s birth. Mother's counsel said mother and father moved in together around H.'s second birthday, in about May 2021. The court repeated that it was finding that father was a biological father as to both H. and Princess. The following colloquy ensued:

"[Father's counsel]: Your Honor, the prior finding was presumed, and looked like it was [on a Family Code section] 7611(d) basis.

"The Court: Yes, but that was based on inaccurate information. . . . Mother misrepresented the facts to me. I was led to believe he was on the birth certificate and he's not.

"[Father's counsel]: . . . I looked at his declaration. He never stated that that was the case himself. But he did live with the child—the children for that extended period and held himself out and supported.

"The Court: He lived with the children from the age of two. The child turned two and then he started living with the child. So he's lived with the child . . . for six months.

"[Father's counsel]: So, Your Honor, I'm just trying to clarify. Is the court reversing that decision?

"The Court: I am reversing that decision because I based my decision on the fact that the father was on the birth certificate.

"[Father's counsel]: I'll just lodge my objection.

"The Court: The father is not on the birth certificate and I have been told that father did not start living with [H.] until after her second birthday.

"[Mother's counsel]: I am looking at the paternity questionnaire. Mother did not say that he signed the paternity questionnaire for [H.]. She did say that he has held himself out as [H.'s] father and acted like her father and that they were living together for a period of time. So I think he would qualify under [Family Code section] 7611(d). [¶] . . . [¶]

"The Court: . . . I relied primarily on mother's assertion. I can revisit my finding. I don't believe it was accurate. He's not

7

on the birth certificate. They weren't married. And he was not—he lived with the child for six months. . . . [¶] . . . [¶] . . . So I don't believe the length of time that he's been with mother suffices for presumed status. He's not on either of the children's birth certificates. And—but mother is maintaining that he is the biological father for both children. [¶] In any event, I don't think—I think now that I have the birth certificates and I've reconsidered the facts, I don't think that a presumed father status is warranted."

With regard to disposition, the court ordered the children removed from the parents and granted mother and father reunification services. Father was ordered to drug test and participate in a 12-step program, take a parenting class, and comply with all criminal court orders. Mother was ordered to complete a full drug program with random or on-demand drug testing. Both parents were granted monitored visits with the children three times per week.

Father timely appealed from the February 18, 2022 disposition order.

## IV. Additional facts relevant to the Indian Child Welfare Act.

On December 14, 2021, mother and father submitted ICWA-020 forms in which they stated that neither they nor the children were members of or eligible for membership in a federally recognized Indian tribe or possessed Indian identification cards; none of their ancestors was a member of a federally recognized Indian tribe; neither they nor the children were domiciled on a reservation; and the children had not been wards of a tribal court. The court noted that the parents were unable to sign the ICWA-020 forms because appearances were

8

remote, but the parents' forms "indicat[ed] that no factors apply to [them] that would cause the court to know."

In response to the court's questions regarding ICWA, mother's counsel said both of her parents were from Guadalajara and she did not believe she had any Native American ancestry. Father said he had spoken to his parents and he did not have any Native American ancestry. The court therefore found there was no reason to believe that ICWA applied to the children.

While this appeal was pending, on January 23, 2023, the court ordered DCFS to interview or attempt to interview all extended family members about whether the children are, or may be, Indian children, and to document those efforts and submit a written report.[4]

## DISCUSSION

### I. Father is a presumed father pursuant to section 7611, subdivision (d).

Father contends that the juvenile court erred by failing to find that he qualified for presumed father status under section 7611, subdivision (d).[5] For the reasons that follow, we agree.

#### A. Legal standards.

Dependency law distinguishes between "alleged," "biological," and "presumed" fathers, which determines the extent to which a father may participate in dependency proceedings and

___

[4] The court grants DCFS's January 31, 2023 request for judicial notice of the juvenile court's January 23, 2023 order.

[5] On January 31, 2023, DCFS filed a letter with the court indicating it had not taken a position below on the presumed parentage issue and would not do so on appeal.

be entitled to certain rights.  (*In re Mia M.* (2022) 75 Cal.App.5th 792, 806.)  An alleged father is a man who may be a child's father but has not yet established either presumed father status or biological paternity, and who therefore is not entitled to custody, reunification services, or visitation.  (*In re A.H.* (2022) 84 Cal.App.5th 340, 350.)  A biological father is a man " 'who has established his paternity but has not established his qualification as a presumed parent.' "  (*Ibid.*, quoting *In re J.W.-P.* (2020) 54 Cal.App.5th 298, 301.)  A court may order reunification services for biological fathers " 'if they are in the child's best interest.' "  (*In re A.H.*, at p. 350.)  Finally, a presumed father is one entitled to a presumption of paternity pursuant to section 7611, and who therefore is entitled to " 'all the rights afforded to parents in dependency proceedings, including standing, the appointment of counsel, and reunification services.' "  (*In re A.H.*, at p. 349, quoting Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2022) § 2.60[2][a], pp. 2-129.)

Section 7611 sets out the requirements for presumed parent status.  Two aspects of section 7611 are relevant here.  First, a person "is presumed to be the natural parent of a child" if he or she "meets the conditions provided in . . . Chapter 3 (commencing with Section 7570)"—that is, if he "sign[s] a voluntary declaration of parentage to establish the parentage of the child" (§ 7573, subd. (a)).  A voluntary declaration of parentage "is equivalent to a judgment of parentage of the child and confers on the declarant all rights and duties of a parent" unless the declaration is void, rescinded, or challenged.  (§§ 7573, subd. (d), 7573.5–7580.)

10

Second, a person is presumed to be a child's parent if he or she "receives the child into his or her home and openly holds out the child as their natural child." (§ 7611, subd. (d).) The presumption that arises under section 7611, subdivision (d) "is a rebuttable presumption affecting the burden of proof and may be rebutted in an appropriate action only by clear and convincing evidence." (§ 7612, subd. (a).)

A man who claims entitlement to presumed father status has the burden of establishing by a preponderance of the evidence the facts supporting his entitlement. (*In re E.T.* (2013) 217 Cal.App.4th 426, 437; *In re T.R.* (2005) 132 Cal.App.4th 1202, 1210.) On appeal, we review a trial court's finding of presumed parent status for substantial evidence. (*County of Orange v. Cole* (2017) 14 Cal.App.5th 504, 509.) Under this standard, because father had the burden of proof below, we may reverse only if " 'the evidence compels a finding in favor of the appellant as a matter of law.' " (*Estate of Herzog* (2019) 33 Cal.App.5th 894, 904, citing *In re I.W.* (2009) 180 Cal.App.4th 1517, 1527–1528, disapproved of on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

### B.  Analysis.

As discussed above, the juvenile court found that father was not entitled to presumed father status because his name did not appear on the children's birth certificates. That ruling was in error. As relevant here, Health and Safety Code section 102425, subdivision (a)(4)(C) provides that if a child's parents are not married to each other, the father shall not be listed on the birth certificate unless the mother and father sign a voluntary declaration of parentage or a court has issued a judgment of paternity. Accordingly, the fact that an unmarried father

11

appears on a birth certificate is persuasive evidence that he signed a voluntary declaration of parentage and, thus, is entitled to presumed father status. (E.g., *In re Raphael P.* (2002) 97 Cal.App.4th 716, 738 [evidence that man's name was on the birth certificate was prima facie proof that he signed a voluntary declaration of paternity].) The inverse is not true, however: Evidence that a man's name is not on a child's birth certificate is not dispositive of his presumed father status because a man may be a presumed father under section 7611 *either* because he executed a voluntary declaration of paternity *or* because he received a child into his home and held her out as his own.

There are no specific factors that a trial court must consider to determine that a parent has received a child into the home and has established a parental relationship, and "there is no requirement that a child live with a parent for the parent to achieve presumed parent status." (*W.S. v. S.T.* (2018) 20 Cal.App.5th 132, 144; see also *In re L.L.* (2017) 13 Cal.App.5th 1302, 1314 [father "was not required to live with [child] in order for him to receive her into his home within the meaning of section 7611, subdivision (d)"]; *E.C. v. J.V.* (2012) 202 Cal.App.4th 1076, 1086 ["nothing in section 7611(d) requires [mother's former girlfriend] to have received the minor into her home immediately after the minor's birth" to obtain presumed parent status].) Instead, a parent seeking presumed parent status must "show the existence of a parent-child relationship based on assuming parental responsibilities, demonstrating commitment to the child, and providing support." (*W.S. v. S.T.*, at pp. 147–148; see also *In re Alexander P.* (2016) 4 Cal.App.5th 475, 493 [§ 7611(d) "requires the person seeking presumed parent status to demonstrate an established parental relationship with the minor

and commitment to the minor's well-being"]; *E.C. v. J.V.*, at p. 1087 [inquiry is whether "through his or her conduct, an alleged parent has demonstrated a commitment to the minor child and the minor child's well-being, thereby distinguishing the alleged parent as someone who has entered into a familial relationship with the child from someone who has not"].) In other words, a presumed parent must demonstrate " 'a full commitment to his paternal responsibilities—emotional, financial, and otherwise[.]' " (*In re Jovanni B.* (2013) 221 Cal.App.4th 1482, 1489–1490; see also *In re L.L.*, at p. 1310 [" '[T]he core issues are the person's established relationship with and demonstrated commitment to the child' "].)

Applying this analysis here, we conclude that father is H.'s presumed father as a matter of law. It is undisputed that mother and father have been in an exclusive relationship since H.'s birth in May 2019 and lived together for some portion of H.'s life.[6] Significantly, both parents stated that father supported H. financially and held her out as his child to family and friends,

---

[6] It is not clear from the record exactly when mother and father lived together. During mother's first interview with a social worker, mother said she, father, and H. were living together at the maternal grandmother's home; and mother stated in her December 16, 2021 Parentage Questionnaires that she and father had lived together at the time of H.'s and Princess's conception and birth. At the disposition hearing, however, mother's counsel said mother and father began living together at about the time of H.'s second birthday. Father stated in his JV-505 that he had lived with H. from "birth" to "recently;" he subsequently told a social worker that he and mother were not living together when Princess was born because the maternal grandmother had "issues" with him, but that he would "sneak in the house."

13

and father further stated that he had participated in "[a]ll parental activities" with regard to H. There is no evidence to the contrary. Accordingly, as to H., father is entitled to a presumption of parentage under section 7611, subdivision (d).

The analysis is somewhat different as to Princess. Because Princess was detained immediately after her birth, father was not able to "receive [her] into his home" within the meaning of section 7611, subdivision (d). Accordingly, our analysis is guided by *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 849, in which our Supreme Court considered whether a man who had been prevented from receiving a child into his home could attain presumed father status. The court held that in such a circumstance, a man could not constitutionally be denied presumed father status if he "promptly comes forward and demonstrates a full commitment to his parental responsibilities— emotional, financial, and otherwise." (*Ibid*.) The court explained: "A court should consider all factors relevant to that determination. The father's conduct both *before and after* the child's birth must be considered. Once the father knows or reasonably should know of the pregnancy, he must promptly attempt to assume his parental responsibilities as fully as the mother will allow and his circumstances permit. In particular, the father must demonstrate 'a willingness himself to assume full custody of the child—not merely to block adoption by others.' [Citation.] A court should also consider the father's public acknowledgement of paternity, payment of pregnancy and birth expenses commensurate with his ability to do so, and prompt legal action to seek custody of the child." (*Ibid*.)

In the present case, it is undisputed that father lived with mother during at least a portion of her pregnancy with Princess

and provided financial support for the family. Father publicly acknowledged that he was Princess's father, both during mother's pregnancy and immediately after Princess's birth. Although he was unable to visit mother and Princess in the hospital because he was unvaccinated, he visited virtually through FaceTime. He requested at the detention hearing that Princess be placed with him, and he participated actively in the dependency case, contacting a social worker immediately after she was detained, drug testing and attending parenting classes even before he was ordered to do so, and regularly visiting Princess and H. Accordingly, father is entitled to a presumption of parentage as to Princess.

## II.    ICWA.

Father contends that DCFS failed to conduct an adequate inquiry into the children's possible Indian ancestry because it did not inquire of the children's extended family members. DCFS has filed a partial motion to dismiss this appeal, asserting that father's assertions as to ICWA are moot.

We conclude that father's ICWA claim has been rendered moot by the January 23, 2023 order directing DCFS to conduct a further ICWA inquiry. Our Supreme Court has explained that a case becomes moot "when events ' "render[ ] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief." ' " (*In re D.P.* (2023) 14 Cal.5th 266, 276.) Here, the juvenile court has already granted father the relief he seeks on appeal by ordering DCFS to conduct a further ICWA inquiry. Accordingly, we will deny as moot father's

15

request that we conditionally affirm the disposition order and order a further ICWA inquiry.[7]

## DISPOSITION

The juvenile court is directed to amend the disposition order to give father presumed father status as to both children. As amended, the disposition order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

NGUYEN (KIM), J.*

---

[7]     Having so concluded, we deny DCFS's request for partial dismissal of the appeal as moot.

*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.